Thank you, Judge McKeown. And may it please the Court, my name is Mark Caldwell, I'm representing Ms. Christopherson this morning in this Social Security Disability Appeal. I will keep track of my own time, but I do plan to reserve three minutes if possible for you. All right, I'll also try to watch the clock for you. Thank you. The Court's familiar with the issues in this case, but this case is not one of multiple issues. It's fairly straightforward in the sense that the agency relied upon the opinion of a one-time consultative examiner, Dr. Geary, and discredited the opinions of two treating psychiatrists, Drs. Cowley and Sidhu, and the opinion of the treating nurse practitioner, Ms. Pinson, in denying this disability claim. Both Dr. Cowley and nurse practitioner Sidhu began treatment, and the latter treatment was undertaken. I'm sorry, I misspoke. Dr. Cowley and Ms. Pinson began treatment, and subsequently treatment was undertaken by Dr. Sidhu. Dr. Sidhu gave a global assessment of functioning score of 45 that the administrative law judge recognized, and to quote directly, would lead to a conclusion, obviously this lady cannot work. Dr. Geary performed a psychological consultative examination. Of note, that psychological consultative examination did not fulfill the commissioner's own requirements for consultative examinations, because the agency did not furnish Dr. Geary with background medical records. And the agency's own regulation, 20 CFR 404.1517, indicates that the agency has an obligation to give examiners background medical information. And the agency's own regulation at 20 CFR 404.1519N, subsections C, 3, and 4, indicate that the elements of a complete consultative examination include review and comment upon positive and negative findings therein, which obviously ---- Ms. Pinson. Well, in the Mullahan case, there you had the situation where you have one doctor, and then he, his practice is taken over by another doctor, so it's kind of a continuum there. Right. And it wasn't clear to me whether, with respect to the nurse and her related doctor, that there was that same continuum of past records of your client, in other words, on which they were basing things. So for the same thing you're criticizing now, Dr. Geary, it seemed, or I'd like to ---- I'd be interested to know what kind of foundational record they also had in making their opinion. Okay. I see your point. Dr. Cowley and nurse practitioner Pinson were the ones who initiated the treatment at that point in time. Right. And they took a history, so they knew about the fact that this woman had been hospitalized at Riverside Medical Center for the psychotic episodes and whatnot. But at the time they gave their assessments, and I think the district court was right on this point, the ---- they had just initiated their treatment of the claimant. So this is not a point where, you know, they had ---- they were not taking over for another medical provider in terms of their treatment. So that's the distinction from Holohan. Holohan was the same treating group, and it was simply a new doctor who had taken over. That wasn't the case with Cowley or Pinson, I agree. But that's not a reason to favor the opinion of Dr. Geary either, because Dr. Geary was a one-time examiner. He saw this woman one time, and that was the end of the story. The distinction here is that Cowley and Pinson, although they initiated the treatment and provided the assessment that we're discussing, had an ongoing treatment relationship with this woman that eventually became Dr. Sidhu's client, patient as opposed to ---- So I guess the other thing is that Dr. Geary does these tests and explains that, but you're saying he didn't have any foundational material that he should have been provided. And yet the other doctors didn't do the tests, correct? Correct. But they did have the ongoing ---- And where does that leave you in Social Security land? To some extent, I agree that Geary saw the woman one time, and the assessments from Cowley and Pinson were at the beginning of their treatment relationship. I'm not going to hide that fact. But I think what's important about the ongoing treatment relationship is as you look at this record, you see that the signs and findings remain consistent throughout the treatment record thereafter. And when the treatment is undertaken by Dr. Sidhu toward the latter part of the period of time that we're talking about, Dr. Sidhu says her condition is unchanged. So we see some fluctuation in this woman's condition, which, of course, is typical of schizoaffective disorders, as I point out in my brief with some citations to some medical texts. But overall, we don't see any consistent improvement in this woman's condition throughout the point or throughout the period of time that is under consideration. And that's what I think gives credence to Cowley and Pinson and then ultimately to Dr. Sidhu, who says that the woman's condition is unchanged toward the latter part of the period of time. Sotomayor, can I go back to the regulation that you cited that you feel that the was violated in terms of what Dr. Geary should have been provided? Is that a basis for rejecting or having a remand where his testimony is the one that in the end is credited? I'm trying to understand what the legal effect of that argument is. It's only part of my argument, Judge. I understand. And I don't want to make too much of it, quite frankly. Okay. I didn't know whether to make little or much, so I'm just asking you. In between. All right. It's a defect in the consultative examination, but that's not the underlying problem with compliance upon the Geary report. The fundamental problem with the Geary report is it's the opinion of a one-time examiner as opposed to the opinion of the treating doctors. And that's where you get the requirement for specific and legitimate reasons to disregard the views of the other two, right? See, I don't agree with that, Judge. You don't. Okay. I think it has to be clear and convincing. I think it's the higher standard. And the reason I believe that is I don't believe Dr. Geary's report under this Court's decision in Orn, O-R-N, versus Astru. I see your writing, so I'll give you the citation. It's 495F3-625-2007. The Geary report is not substantial evidence in and of itself. And the point there is that a treating physician's opinion can be considered to be contradicted if it is ‑‑ if it is contradicted by substantial evidence. But if the Geary report is not substantial evidence in and of itself, then it doesn't rise to the level to show that the treating physician's opinion is contradicted. It's insubstantial evidence as opposed to substantial evidence if you only have a contradiction when there's substantial evidence opposing substantial evidence. So what you're really saying, then, is that if there was a question about the ALJ failing to provide specific and legitimate reasons, it certainly didn't provide clear and convincing evidence. Is that right? Absolutely. That's exactly correct. And because of that, we have to go with Dr. Geary. Is that right? No, not Dr. Geary. I mean the other way around. The other person. Excuse me. Pardon me. There's so many doctors. Yes. But you're also ‑‑ I'm trying to understand if it's like a slight bootstrapping on the standard of review, because to get to the clear and convincing as opposed to the specific and legitimate, you have to, in effect, kind of pull the rug out from under Dr. Geary's opinion to begin with. Therefore, you don't have the contradiction. And the basis for doing that is what? Dr. Geary's evaluation under Orn is not in and of itself substantial evidence. And that's exactly the argument the Commissioner made in Orn. The Commissioner said, well, it's the opinion of an examining doctor, therefore it's substantial evidence. And this Court said very clearly, we disagree. However, having said that, let me also say one other thing. Under either clear and convincing or specific and legitimate standards, the analysis still fails. So I certainly want to argue for the clear and convincing standard, but I don't want to leave the Court to believe that I feel that somehow I don't have a case under the specific and legitimate reasons supported by substantial evidence standard as well. I believe that I do. Now, Judge Murgia found that there was, in fact, she didn't use the higher standard you referred to. She referred to the specific and legitimate reasons that are supported by substantial evidence in the record. What deference, if any, are we to give Judge Murgia's determinations here? Well, I'm aware that my position here is a little awkward. Well, forget that she's a colleague now. Having said that, the district court's opinion, of course, is worthy of review, but it's not entitled to any deference. This is a de novo review. So it's a de novo, right. And I'm certainly not arguing that you can't look at the district court's decision, but this Court looks at this case afresh. Right. And that's what I think is important. So before I run out of my time, because I do want to reserve some time for rebuttal, I also want to address the second issue in this case, and that's the claimant's or the ALJ's credibility determination regarding the claimant's testimony. I think she certainly talked about symptoms that are facially inconsistent with the ability to sustain work, so I doubt that there's any issue there. The issue is, did the ALJ give clear and convincing reasons? And what's interesting here is the Commissioner is asserting in their response to my Rule 28J letter that all of a sudden the clear and convincing standard has evaporated, which is really interesting, because in their reply brief they said the clear and convincing reason applied. And so it's hard to understand what happened between the reply brief and the response to the Rule 28J letter. But they're relying on Bunnell v. Sullivan, where this Court said that specific reasons have to be given. And this Court, in that one case, didn't go any further. The only response I want to make to that is that, you know, this Court hasn't been wrong in the three dozen or four dozen cases in which this Court has used the clear and convincing standard, including the Taylor case on October 27th. The issue in Sullivan was, were there specific reasons that had to be articulated? The level of the specificity wasn't at issue. And that's the only reason in Bunnell v. Sullivan that that issue wasn't addressed. The reasons given to reject a claimant's symptom testimony have to be specific and clear and convincing. And that's the standard that wasn't met here. May I reserve my remaining time? You may.  Good morning, Your Honors. May it please the Court, my name is Nadia Sullivan, and I represent the dependent appellee, the Commissioner of Social Security. Before I start, I wanted to – this case is, as I agree with Christofferson, is a straightforward case. We have basically three opinions that Christofferson relies upon and one opinion that the ALJ relied upon. The – across the board, all of these opinions are equal, as the ALJ and as the district court noted, because at the time they were rendered, each of the doctors examined Christofferson one time. And this is significant because when we look at treating physician opinions, the reason that we give deference to certain opinions is where a doctor has seen a claimant for an extended period of time, and so they have developed what we refer to as the longitudinal picture of their impairment. And they're in a better position to offer an opinion of their functioning. We didn't have that situation here. We had Nurse Pinston who examined Christofferson initially and then offered her opinion, followed by Dr. Cowley the following day. It's not clear and actually is our position that Dr. Cowley did not actually examine her because he didn't sign the notes. So he basically concurred with Nurse Pinston's opinion. The third opinion that we have is from Dr. Sidhu. Similarly, Dr. Sidhu completed or offered his GAF score. He actually didn't offer any specific functional limitations. And that was done after one examination. The other key distinctions between these opinions is that, and a very significant detail, is that both Nurse Pinston and Dr. Cowley rendered their opinions at a time that Christofferson was not taking any antipsychotic medication. And that's a critical distinction here. Many of the complaints that she talked about and that the records postdating her alleged onset date of December of 2005 deal with her complaints of hallucinations, anger outbursts, those types of issues connected with psychosis. Once she started treatment and was put back on her Haldol and before she saw Dr. Geary, she no longer complained of those types of symptoms. So, again, Ninth Circuit case law recognizes that if you have a condition that is that can be alleviated with treatment or medication, it's not the basis of finding a disability. In this case, the records that come after Dr. Geary's examination is consistent with the findings of Dr. Geary that the medication was actually improved her situation. After Dr. Geary's examination and Christofferson returned to Dr. Pinston and Dr. Cowley, who actually, I should note, did not really see them very much. There were about six occasions. Two times she saw Dr. Cowley, four times she saw Dr. Nurse Pinston. Those records show she no longer complained of psychosis. That's significant. It shows that her medication was working. The records also show that she had some difficulties with sleep, but for the most part she was doing fairly well. She also had a young infant, and actually some of her sleep issues were attributed to taking care of her child. The only time that she really talked about abnormal fatigue was very late in the process, August of 2007. And the response of her doctors was simply to change her medication. And plaintiff didn't return for treatment until January of 2008. That certainly, we can infer from that that she wasn't suffering that type of abnormal fatigue or she would have gone back to get further treatment. Ultimately, I mean, you're doing a beautiful job of reciting these important facts in the record, but ultimately aren't we left with the issue of whether we have a treating physician dealing with this petitioner. You've got other physicians that may or may not be treating physicians also dealing with this petitioner at different points. It's a question of what the ALJ had to determine to deal with the contradictions because they weren't internally consistent, the recommendations. And it may be because of the different periods of time, whether or not she was taking medication and the like. But we have to apply these review standards, and the ALJ has to respond if you have a higher or a lower standard. But there clearly has to be a discussion as to why the ALJ buys one set of facts and not the other. Is it the commissioner's perspective that in this case that the ALJ complied with all of the requirements necessary to uphold the commissioner's determination? Yes, Your Honor. We believe that in this case the specific and legitimate reason standard applies. I disagree with counsel's description of Orn v. Astru. Kristofferson asserts that an examining physician's opinion may not constitute substantial evidence. What, in my reading of Orn, says that an examining physician who provides independent clinical findings that differ from the findings of the treating physicians under those circumstances, the findings is substantial evidence. And that's what we have here. And where we're in the record are these specific and legitimate reasons for crediting the testimony of one versus the other? We're in the ALJ's decision? Yes. The ALJ actually gave specific reasons and legitimate reasons. And those, he said, let me turn to it here. He noted that he relied on the nature and extent of the consultation. I'm sorry, page 8, ER 8, or transcript 20.  Towards the bottom, second to last paragraph, it says, as for the opinion evidence. Thank you. The ALJ gave specific reasons, and the district court discussed those reasons and agreed with them. These opinions, while these doctors over time were considered treating doctors, at the time they rendered their opinions, they were examining physicians. They didn't have they had no history with Ms. Kristofferson. And Kristofferson is trying to rely on subsequent treatment records to that post-date that opinion as a justification for relying on it. But at the time those opinions were rendered, they were all in an equal that was an equalizing factor because none of the doctors had a treating relationship. That's one of the factors. So basically the standard that your opposing counsel was talking about doesn't apply here because everybody is a co-equal basically, right?  Correct, Your Honor. The ALJ also relied on the clinical and medical findings in this case. Dr. Nurse Pinson, if you look at her opinion or her treatment notes that support her opinion, is really a checkbox-style fill-in-the-blank type form. There's very minimal, as the ALJ found, objective evidence discussed. She ends with a conclusion of Kristofferson's diagnosis. Contrast that with Dr. Geary's report. He has a five-page report, detailed, where he documents his clinical observations. He conducts an interview. He has diagnostic tests to check for such things as her memory, whether or not her memory is intact. He poses hypothetical questions to evaluate insight, judgment. There's quite detailed clinical findings that supports his opinion. Dr. Sidhu essentially copied or recorded Kristofferson's subjective complaints and circled his findings. There's not much in terms of actual, of any type of testing that was performed or the basis for the mental status findings. And so the ALJ certainly, it was reasonable for him to give Dr. Geary's opinion more weight on it than Sir can. So basically, from your perspective, what wins this case for the Commissioner is that all of these people are treated the same. Nobody's the treating physician any more than the other person. So they're all on equal footing. They're co-equal for purposes of a. Yes, Your Honor. And Dr. Geary's position actually had the medical findings that are important so that we can determine the value to be placed on it. The other factor, Your Honor, that I think is crucial is the GAF score itself. Although, may I just ask, the way the Commissioner or the ALJ characterizes it, he characterized it as the treating physician and nurse practitioner not on co-equal footing. Well, they're in terms, they're co-equal in the sense that none of them had an extended relationship. They were one-time examiners. You know, the nurse practitioner in this case, her opinion is even given less weight under our regulations because she's an other source type opinion. Correct. And while an ALJ might consider it, it's not given the type of deference that certainly a treating physician or another acceptable medical source would be given under our regulations. One thing I wanted to note is, particularly with Dr. Sidhu, certainly she was, we don't know because the record is so limited whether she was on medication, but assuming that she was, Dr. Sidhu didn't offer any specific limitations. He gave a GAF score, and a GAF score alone doesn't really tell you what a person's limitations are in the work arena. This is supported by Zebra. I know it's an unpublished case, but they talk about, particularly when a GAF score is inconsistent with the bulk of the records, that you would, it's permissible not to rely on a GAF score. Can I go to a second part of the case? This has to do with the discounting of the symptom testimony of the claimant here. As I understand it under Lingenfelder, there's a two-step analysis that's involved in determining whether the symptom testimony is credible. The first one, ALJ asks to determine whether the claimant has presented objective medical evidence of the underlying impairment, and this is the important part, which could reasonably be expected to produce the pain or other symptoms alleged. But she only has to, in this case, show not that it, but it isn't a question of severity, it's whether it could cause it at all. The second part of the test is you have to be sure there's no evidence of malingering. How did the ALJ comply with that standard here? Was that sufficient? Well, the ALJ, under our rulings and regulations, is required to evaluate the intensity, persistence, and limiting effect of symptoms. Under our rulings, the ALJ is required to just, to give specific findings. Right. The ALJ did provide specific reasons. He looked at the objective medical evidence, and he also looked at the limited and conservative treatment. And what he found was that not that these factors equated with the ability to work. What he found was that this evidence showed that Christofferson's claims that her symptoms were disabling were inconsistent with the level of treatment that she was being provided. So it's the fact that both what was recommended and the fact she didn't always use what was prescribed, is that the concept? Well, partly. I mean, if we assume that she was on medication and taking her medication, the extent of her treatment, which was limited, she saw, although she alleged disability in December of 2005, she really didn't. She saw, I think, treatment twice in 06 and maybe seven times in 08, and her treatment was limited to medication. And that medication, under the records, showed that it was actually working for her and controlling her major psychosis. She was no longer having hallucinations. And so the ALJ concluded that certainly if you were to believe Christofferson's claims concerning the severity of her symptoms, surely her doctors would have responded with much more aggressive treatment. I mean, Christofferson was not hospitalized. She was – doesn't appear to be being involved in any intensive type of counseling type scenario that would be more consistent with the types of claims that she was projecting. And there were inconsistencies also with respect to, for example, like her fatigue. May I ask you about that conclusion? What is the basis for the conclusion that she should have been having more aggressive or different treatment? Because in cases we see, in fact, people with mental conditions, even if they're hallucinating or seeing things or believing things as she might have, they don't necessarily seek treatment. And the medication is a form of treatment, but they don't necessarily seek additional treatment. So I'm wondering what conclusion you're asking us to draw from that. Well, our regulations require us to consider the treatment and how effective it is. And in a situation here, it certainly appears to be an inconsistency where Ms. Christofferson was being treated with medication. It looks like it was effective. But yet she is claiming she continued to have disabling symptoms. And a reasonable inference could be drawn that given the lack of extensive treatment, these doctors didn't seem to be proposing anything more. It's a reasonable basis to find her statements, the veracity of her statements, to question it. And that's the extent of using it. I mean, particularly with the GAF score, again, you would think that with a score, a low score, Dr. Sidhu would not tell her to come back in eight weeks and let's you evaluate your plan in six months. Surely if the score really reflected symptoms that she was in such a serious mental state, he would have required more extensive, certainly frequent-type treatment. Thank you. Do you have some time for rebuttal? Thank you, Judge McKeown. I want to respond with one very fundamental principle, and that is what this Court has recognized over and over and over again. I think the most recent case would be Bray, E-R-A-Y, that I cite in my brief. And that is this Court's review is restricted to the reasons given in the ALJ's decision. And the Commissioner has done a pretty good job of trying to argue this based upon reasons not found within the ALJ decision. For example, the ALJ never said that Doctors Cowley and Sidhu and Nurse Practitioners Pinson had seen Ms. Christofferson one time at the time of their evaluation, as Judge McKeown pointed out. The ALJ recognized that those were treating source assessments. The Commissioner can't argue otherwise now. The Commissioner is arguing about a GAF score. The Commissioner can't undo the ALJ's own words at the time of the hearing. If that GAF score is accepted to quote directly, obviously this lady can't work. That's what the ALJ said. That's what the Commissioner is bound by now. The Commissioner can't have it both ways. As to the argument about more aggressive treatment, I think Judge McKeown has hit the nail on the head. You've got to look at these things realistically. The treatment that mentally impaired people get is affected by their mental impairment. And certainly the resources that are available are not as numerous or abundant as we might hope. So those are my most important points. If there are any questions from the Court, I'll be happy to respond. It appears not. Thank you. Thank you, Judge. I thank both counsel for your arguments, very professionally done and very helpful to the Court. The case of Christofferson v. Estru is submitted and we're adjourned for the morning. All rise.
judges: Brewster, McKeown, Smith